**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| PRISCILLA GADSDEN, | ) | |
| | ) | No. 4:12-cv-02530-DCN |
| Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

      This matter is before the court on United States Magistrate Judge Thomas E. Rogers, III's report and recommendation ("R&R") that the court reverse the Commissioner of Social Security's decision to deny claimant Priscilla Gadsden's application for supplemental security income ("SSI"). The Commissioner has filed objections to the R&R. For the reasons set forth below, the court adopts the R&R, reverses the Commissioner's decision, and remands the case for further administrative proceedings.

## I.  BACKGROUND

      Unless otherwise noted, the following background is drawn from the R&R.

### A.  Procedural History

      Gadsden filed an application for SSI on September 3, 2008, alleging that she had been disabled since July 14, 2008. The Social Security Administration ("the Agency") denied Gadsden's application both initially and on reconsideration. Gadsden requested a hearing before an administrative law judge ("ALJ") and ALJ Augustus C. Martin presided over a hearing held on December 10, 2010. In a decision issued seven days

1

later, the ALJ determined that Gadsden was not disabled.  The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied further review on June 30, 2012.

Gadsden filed this action for judicial review on September 30, 2012.  On April 29, 2013, she filed a brief requesting that the Commissioner's decision be vacated and the case remanded to the Agency for further consideration.  On June 13, 2013, the Commissioner filed a brief contending that her decision should be upheld because it was supported by substantial evidence.  On December 18, 2013, the magistrate judge issued the R&R, recommending that the Commissioner's decision be reversed and remanded for further consideration.  R&R 27.  The Commissioner objected to the R&R on January 3, 2014 and Gadsden replied to the Commissioner's objections on January 19, 2014.  This matter has been fully briefed and is now ripe for the court's review.

### B.  Gadsden's Medical History

The court adopts the R&R's comprehensive description of Gadsden's medical history and here recites only a few relevant facts.  Gadsden was born on March 1, 1976 and was thirty-two years old on her alleged disability onset date.  Tr. 28-29.  She has a twelfth grade education and past relevant work as a receptionist, bank teller, pharmacy cashier, and supermarket customer service representative.  Tr. 30, 32.

### C.  ALJ's Findings

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A); 20 C.F.R. § 404.1505.  The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520, 416.920.  Under this process, the ALJ must determine whether the claimant:  (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her RFC) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job.  See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).  The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

        To determine whether Gadsden was disabled from July 14, 2008, through the date of his decision, the ALJ employed the statutorily-required five-step sequential evaluation process.  At step 1, the ALJ found that Gadsden did not engage in substantial gainful activity during the period at issue.  Tr. 12.  At step two, the ALJ found that Gadsden suffered from the following severe impairments: back disorder, anemia, obesity, hypertension, migraine headaches, and hypothyroidism.  Id.  At step three, the ALJ found that Gadsden's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's listing of impairments.  Tr. 13.  Before reaching

3

the fourth step, the ALJ determined that Gadsden retained the residual functional capacity to perform sedentary, unskilled work with only occasional postural movements and an option to alternate position at will.  Id.  The ALJ also found that she could lift and carry up to ten pounds occasionally and a lesser amount frequently, as well as stand, walk, and sit for six hours each in an eight-hour work day.  Id.  At the fourth step, the ALJ found that Gadsden was unable to perform any of her past relevant work.  Tr. 17.  Finally, at the fifth step, the ALJ found that Gadsden could perform jobs existing in significant numbers in the national economy and concluded that she was not disabled during the period at issue.  Tr. 18-19.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  This court is not required to review the factual findings and legal conclusions of the magistrate judge to which the parties have not objected.  See id.  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court.  Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Id. (internal citations omitted).  "[I]t is not within the province of a reviewing court to determine the weight of

4

the evidence, nor is it the court's function to substitute its judgment for that of the

[Commissioner] if his decision is supported by substantial evidence." Id.

### III.  DISCUSSION

Gadsden initially alleged that the ALJ erred by:  (i) failing to consider the

combined effect of her impairments at Step 3; (ii) finding that her testimony regarding

her subjective complaints was not credible; and (iii) improperly assigning significant

weight to the opinion of Dr. Daniel Bates, a consulting physician.  In his R&R, the

magistrate judge determined that Gadsden's first and third arguments are unavailing, but

that remand is warranted to allow the ALJ to properly address Gadsden's credibility.  The

Commissioner objects to the R&R insofar as it recommends remand, and argues that the

ALJ's credibility determination was supported by substantial evidence.

The parties have not objected to the magistrate judge's findings with regard to

Gadsden's first and third arguments.  The court agrees that those findings are sound and

adopts those portions of the R&R without further comment.  All that remains to be

considered is whether the ALJ properly assessed Gadsden's credibility.

The Fourth Circuit has developed a two-part test for evaluating a claimant's

subjective allegations of pain and other symptoms.  Craig v. Chater, 76 F.3d 585, 594

(4th Cir. 1996).  First, the ALJ must determine that there is objective medical evidence of

a medical impairment reasonably likely to cause the pain or other symptoms alleged by

the claimant.  Id.; SSR 96-7p, 1996 WL 374186 (July 2, 1996). Second, the ALJ must

evaluate "the intensity and persistence of the claimant's pain, and the extent to which it

affects her ability to work."  Craig, 76 F.3d at 595; SSR 96-7p.  This evaluation

> must take into account not only the claimant's statements about her pain,
> but also all the available evidence, including the claimant's medical

history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citations omitted).  Moreover, a claimant "may not be penalized for failing to seek treatment she cannot afford."  Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986).  As a result, an ALJ should not discount a claimant's subjective complaints on the basis of her failure to seek medical treatment when she has asserted – and the record does not contradict – that she could not afford such treatment.  Id.

An ALJ evaluating a claimant's subjective complaints "should refer specifically to the evidence informing the ALJ's conclusion."  Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).  This "duty of explanation . . . is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."  Id.  In addition, an ALJ's decision regarding a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p.

The Commissioner is correct that the ALJ touched on a number of factors when analyzing Gadsden's credibility.  Nevertheless, the ALJ's analysis focused on Gadsden's limited medical treatment history.  In setting forth his finding that Gadsden's complaints were not credible, the ALJ wrote:

6

Claimant only sought minimal additional treatment for her back pain. . . .
She was seen four times at Charleston Neck and Back Center, . . . but did
not continue treatment, although her physician directed her to continue
treatment for an additional three weeks.
. . .

Other than reporting back pain to her primary care physician, the claimant
received no other diagnostic testing or physical examination concerning
her back until another MRI was taken in September 2009.

. . .

Other than [two] MRIS [conducted after Gadsden's 2008 back surgery]
and complaints to her primary care physician of back pain, the claimant
has had no x-rays or other objective testing conducted concerning her
back.  Other than being prescribed pain medication, the claimant was not
given anything further to help alleviate her pain symptoms.  She did not
seek additional treatment, was not referred to any back specialists or to
any pain management centers, and did not explore any other options to
help with her pain. . . .

. . . The claimant also informed Dr. Bates that she has been suffering from
migraine headaches.  However, the claimant has never seen a specialist,
sought alternative medical treatment, or received any diagnostic testing
with regards to her migraine headaches.

Tr. 14-16.  The ALJ summed up this discussion by stating that "A review of the medical

records shows an individual with minimal treatment for any medical provider or hospital

compared to the limitations she is alleging."  Tr. 16.

At the hearing held on December 10, 2010, Gadsden explained that she had been

uninsured since 2008 and, as a result, had had limited medical treatment.  Tr. 34.  In the

two years that Gadsden was without health insurance, she testified that her back condition

had gotten worse but that she "wasn't able to get the attention [she] needed so [her]

primary care physician was doing his best to help [her] stay as comfortable as he could."

Tr. 35.  Gadsden also testified that she had not gone to a mental health counselor because

she couldn't afford it.  Tr. 36.  Other than Gadsden's own testimony, the record contains

no evidence on her ability to afford medical treatment.  At the hearing, the ALJ did not ask whether there were other, more affordable treatment options available to Gadsden.  In his otherwise very thorough opinion, the ALJ did not include specific factual findings regarding the resources available to Gadsden and whether her failure to seek additional medical treatment was based upon her alleged inability to pay.

Because the ALJ's analysis of Gadsden's credibility both relies heavily on her limited medical treatment history and fails to address whether she could afford to pay for other medical treatment, remand is warranted.  On remand, the ALJ should make factual findings regarding Gadsden's financial situation and its impact on her ability to seek medical treatment.  To the extent that the ALJ continues to find that Gadsden's lack of medical treatment lessens her credibility, the ALJ should refer specifically to the evidence that informs his conclusions, taking care that he does not penalize Gadsden for failing to seek treatment that she could not afford.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's report & recommendation, ECF No. 27, **REVERSES** the Commissioner's decision, and **REMANDS** under sentence four of 42 U.S.C. § 405(g) for further proceedings.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 3, 2014**
**Charleston, South Carolina**